UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
APR 21 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-279-GWU

WANDA S. COTTON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Cotton

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Cotton

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

Cotton

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Cotton

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Wanda S. Cotton, filed her current application for DIB on July 29, 2002, alleging disability since January 19, 1995 due to arthritis, high blood pressure, and depression. (Tr. 75-8, 106). She had filed prior applications for DIB, as well as Supplemental Security Income (SSI) benefits, alleging the same onset date. The most recent of her prior applications was denied in a decision by an Administrative Law Judge (ALJ) on November 13, 2001 (Tr. 34-42), and affirmed in a decision by this Court on July 31, 2003. Cotton v. Barnhart, London Civil Action No. 02-418 (E.D. Ky.). Her Date Last Insured (DLI) was June 30, 2000 (Tr. 19), meaning that she was required to show disability existing before that date in order to be entitled to DIB.

The ALJ in the present decision found "severe" impairments consisting of a history of hypertension, degenerative disease, and multiple joint osteoarthritis. (Tr. 22). However, the ALJ determined that Mrs. Cotton retained the residual functional

capacity to perform "light" level exertion, with no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps and stairs, crouching, and crawling, and no exposure to unprotected heights or dangerous moving machinery. (Tr. 23). Her ability to make occupational, performance, and personal-social adjustments would be at least "limited but satisfactory" in all categories. (Id.). A vocational expert (VE) who testified at a previous administrative hearing stated that a person with this residual functional capacity would be able to return to the plaintiff's past relevant work as a receptionist, file clerk, deli worker, and teacher's aide. (Tr. 40-1). Therefore, the ALJ in the current decision concluded that the plaintiff could return to her past relevant work, and was not entitled to benefits.[1]

---

[1] It would appear that there is no unadjudicated period prior to the expiration of the plaintiff's insured status, since the prior, final ALJ decision considered Mrs. Cotton's condition all the way through the DLI. The ALJ in the present case stated at the administrative hearing that "the only reason we're here today is because the administration made policy that they would not apply res judicata to your type of situation because there were new musculoskeletal regulations and listings effective February 19th, 2002 . . . . So res judicata doesn't apply, but by holding this hearing I'm not reopening any of your prior applications or determinations." (Tr. 520-1). No reference was made to this rationale in the hearing decision, although the ALJ did cite the cases of Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) and Dennard v. Commissioner of Social Security, 907 F.2d 598 (6th Cir. 1990), which refer to the controlling nature of findings of fact made by the Commissioner in subsequent, unadjudicated periods. (Tr. 18-19). In view of the lack of an unadjudicated period in the present case, and the detailed discussion of the plaintiff's medical condition from 1995 to 2000, it is more likely that the ALJ was reopening the prior decisions, even if he did not expressly say so. See Crady v. Secretary of Health and Human Services, 835 F.2d 617, 620 (6th Cir. 1987); Boyes v. Secretary of Health and Human Services, 46 F.3d 510, 512 (6th Cir. 1994). Since the case was decided on the merits by the ALJ, and the plaintiff also argues on this basis, the Court will do likewise.

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff submitted additional evidence both prior to the DLI and afterward, but none of it established greater limitations than found by the ALJ.

In September, 1995, a few months after Mrs. Cotton's alleged onset date, her treating family physician, Dr. Steven Spady, noted that he "discussed the patient's disability due to anxiety," noting that "every time that she goes to work or tries to get around people she gets very anxious since her son's death." (Tr. 217). However, he added that the plaintiff was trying to move to a different city and "she thinks that it will help a lot." (Id.). He did not include anxiety among his diagnoses, which indicated only hypertension and osteoarthritis of the left shoulder. (Id.). He added: "We will continue on disability until she moves and then she states that she is going to try to find a job." (Id.). Dr. Spady wrote a letter dated November 11, 1995 stating that Mrs. Cotton had generalized anxiety and depression following the death of her son on May 22, 1994 and that she had been "unable to work or function since that time." (Tr. 215). However, it does not appear that Dr. Spady ever prescribed any medication for depression or anxiety over the next five years, and, after the patient refused to get a psychiatric evaluation in June, 1996, Dr. Spady wrote that "I will not be filling out any more insurance forms" (Tr. 213) and only one more reference was made to depression, in December 1996 (Tr. 210). Her office visits from 1995 to 2000 were primarily for

9

transient conditions and for control of high blood pressure, for which the plaintiff often did not take her medication. (Tr. 184-5, 198). A state agency psychologist who reviewed the record in December, 2002, concluded that there was no evidence of a medical impairment prior to the DLI. (Tr. 241). Accordingly, substantial evidence supports the ALJ's determination regarding mental restrictions.

Regarding the plaintiff's physical condition, Dr. Spady prepared a medical assessment form on October 31, 2001 which indicates that the plaintiff could not lift more than seven pounds due to "reported pain in right hip", could not perform full-time standing, walking, or sitting as a result of the same "reported" hip pain, could occasionally climb and kneel, could never balance, crouch, or crawl, would have restrictions on reaching, pushing, pulling, working at heights, around moving machinery, around temperature extremes, chemicals, dust, noise, fumes, and vibration. (Tr. 173-6). An office note of the same date indicates that the plaintiff had come in to have papers filled out for Social Security, but was objectively having problems with her right hip, and was unable to lift her leg over and cross it without some assistance. (Tr. 172). Eventually, in December, 2002, more than two years after the DLI, the plaintiff underwent a total right hip arthroplasty due to degenerative joint disease of the right hip. (Tr. 269). Dr. Spady did not relate his October, 2001 restrictions to the period before June 30, 2000. The plaintiff testified at the November, 2003 administrative hearing that her hip problem had started after a fall in 1999 (Tr. 534), and was present in June, 2000

10

Cotton

(Tr. 538). However, contemporaneous office notes from that time did not suggest that she was having any specific hip complaints prior to the DLI (Tr. 185-92). There was a subjective complaint of left-sided arm pain and leg pain "on and off" in March, 1999, but no findings of musculoskeletal abnormalities were made. (Tr. 193). X-rays in 1996 and 1997 did show asymmetric widening of the sacroiliac joints, worse on the right side. (Tr. 230, 232). A state agency physician who reviewed the evidence in November, 2002, concluded that the plaintiff did not have a "severe" physical impairment prior to the DLI. (Tr. 256). As the court found in its prior Memorandum Opinion, the evidence, particularly from a "disability examination" given by Dr. Spady in July, 1999 (Tr. 56-7), supports the ALJ's finding that the plaintiff did not have more than mild osteoarthritis of the right hip and lumbosacral spine at the time her insured status expired, and the new evidence submitted in connection with the current claim, in addition to not specifically relating to the relevant period, was based on subjective complaints. Therefore, a reasonable finder of fact could have concluded that the residual functional capacity found in the prior decision was still proper.

The decision will be affirmed.

This the ___21___ day of April, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11